STELLA PARKE BEATTY, PLAINTIFF IN ERROR, v. PURITAN COSMETIC COMPANY, A CORPORATION, AND W. ARNOLD BRANNOCK, JR., DEFENDANTS IN ERROR.—158 S. W. (2d) 191.

Kansas City Court of Appeals. January 5, 1942.

*Clif Langsdale* and *Clyde Taylor* for plaintiff in error.

810

*Cowgill & Popham* and *Sam Mandell* for defendants in error.

CAVE, J.—This case reaches this court on writ of error to the Circuit Court of Jackson County, to review a final judgment rendered by that court against the plaintiff, Stella Parke Beatty, and in favor of both defendants. We will continue to refer to the parties as plaintiff and defendants.

The plaintiff sued the defendants for malicious prosecution and at the close of plaintiff's evidence, the court announced he would sustain, and did mark as "given," separate demurrers offered by the defendants. Thereupon the plaintiff took an involuntary nonsuit with leave to move to set the same aside, which motion, together with motion for new trial, was overruled and final judgment rendered. There is but one point at issue in this court and that is whether the trial court committed error in sustaining the separate demurrers of the defendants at the close of plaintiff's evidence.

Plaintiff's petition in substance alleged: That on or about January 25, 1935, the defendant Cosmetic Company, acting through and with defendant Brannock, wilfully, wrongfully and maliciously filed before a justice of the peace in Jackson county, a suit against plaintiff and her husband, claiming that a certain sum of money was due said company from this plaintiff and her husband on account of certain merchandise which it was alleged the company had sold and delivered to the plaintiff; that the defendants knew at the commencement of said suit and thereafter knew that this plaintiff had never bought any merchandise or received the same or agreed to pay therefor, and was in no way responsible therefor; that they caused a summons to be issued out of said court against this plaintiff; that said summons was never in fact served upon plaintiff and that plaintiff had no knowledge of the filing of said suit or the issuance of said summons; that on February 13, 1935, defendants caused judgment to be rendered against the plaintiff in the sum of $219, which included the costs of the justice of the peace court; that had plaintiff known of the filing of the suit, she would have appeared in court and defended against said action; that thereafter, defendants wilfully, wrongfully and maliciously caused the plaintiff to receive no notice of said judgment until the statutory period for appeal had lapsed; that had she known of such judgment within proper time she would have appealed therefrom; that thereafter, defendants issued a writ of attachment and

garnishment against the Columbia National Bank of Kansas City, where plaintiff had on deposit certain monies, and collected on said judgment the full amount thereof; that the defendants wilfully, wrongfully, unlawfully and maliciously, and by the use of perjured testimony, caused said judgment to be rendered against this plaintiff; and that as a result thereof, she was damaged in the sum of $2500 actual damages, and $5000 punitive damages.

Defendants answered by filing a joint general denial.

Because the sole question for consideration is the propriety of the trial court in sustaining demurrers at the close of plaintiff's case, we must detail the evidence more fully than otherwise would be necessary.

Plaintiff introduced the records of the Justice of the Peace court which disclose the following facts: On January 25, 1935, the Puritan Cosmetic Company, Inc., a corporation, one of the defendants in error here, filed its suit based on statement of account against Stella Parke (Mrs. Ray) Beatty and her husband, Ray Beatty, before Louis J. Mazuch, Justice of the Peace, demanding judgment for $208.41 and costs for goods purchased in October, 1933; that summonses were issued directed to Mr. and Mrs. Ray Beatty and were returnable February 8, 1935. The constable's return shows that he personally served the summonses on the defendants Ray Beatty and Mrs. Ray Beatty, on January 28, 1935. On February 8, the cause was continued by plaintiff to February 13, on which date a default judgment in the sum of $208.41 was entered by the Justice of the Peace against both Mr. and Mrs. Ray Beatty; the judgment reciting that "although the defendants had been duly and legally served with process, come not but make default," and said cause was taken up and the "evidence heard" and judgment rendered for the plaintiff in the sum of $208.41 and costs against both defendants. Thereafter execution was issued on March 9th, and on March 11th a summons of garnishment was served on Columbia National Bank of Kansas City; on March 22nd the cause was continued by agreement to March 26th, at which time the garnishee filed answer admitting that Mrs. Ray Beatty had on deposit in said bank money in excess of the amount of the judgment. On April 8th, the plaintiff herein filed her motion in justice of the peace court to vacate the service of the garnishment and to quash it, because there had been no service of the original summons on her, which said motion, after a hearing, was overruled and the garnishee ordered to pay the money into court, which, in due course, was done and the judgment satisfied. There was no appeal taken by Mrs. Beatty from the order of the justice of the peace overruling her motion to vacate and quash the garnishment writ. This judgment was satisfied on April 22, 1935, and on April 25, 1935, the plaintiff filed her petition in this cause against Puritan Cosmetic Company and W. Arnold Brannock, Jr., the attorney who had filed the original suit.

Harry A. Austin, clerk of the justice court, testified as a witness for plaintiff and identified the records of that court and from the records

only and not from any independent recollection, testified that neither of the defendants, Mr. or Mrs. Beatty, appeared at the trial in the justice court. Elizabeth Hanger also testified as a witness for plaintiff and stated that she was formerly a partner of Ray Beatty in his business for which the bills sued on were contracted and that Mrs. Beatty had no interest in that business.

The account as filed in the justice court was made out to "Mr. and Mrs. Ray Beatty, 1023 Grand Avenue, Kansas City, Missouri," and showed sales of merchandise to them on October 2-4-20-24, 1933, totalling $283.41, and showed credits by three checks of $25 each on January 4-22, and February 7, 1934, for the total sum of $75, leaving a balance due on the account of $208.41. Attached to that was a more detailed statement of the purchases made on October 2d, showing the order number, the invoice number, the salesman, and the method of shipment; together with the various items purchased and the price of each item; this invoice was made out to Mr. and Mrs. Ray Beatty. The purchase made on October 4th was in detail, as above, but was made out to Ray Beatty alone, and the same is true of the invoices of October 20th and October 24th.

The plaintiff, Mrs. Beatty, testified that she never at any time bought any merchandise of any kind from the defendant company, nor had she ever authorized any one so to do; that she had never received any merchandise from the company, nor had she or any one authorized by her, ever agreed to pay for any such merchandise; that the company nor any representative thereof had ever asserted to her that she was indebted to the company in any amount or on any account; that she had never received an invoice or statement of account from the company and no demand had been made of her to pay the account. She further denied that she had ever been served with summons by the constable as shown by his return.

She also testified that at the time this account was made, she owned and operated a hotel in Kansas City and that she had no interest in the business operated by her husband and Mrs. Hanger. That in 1933 she went to St. Louis with Mr. Beatty when he went to establish credit with the Puritan Cosmetic Company; that he talked to the credit manager of that company and after such discussion Mr. Beatty established credit. When Mr. Beatty had established his credit, she testified, she told defendant's credit manager "this is his business and not mine, and I am not liable for any bills by him," and to that statement the credit manager replied that they "didn't expect it, as I wasn't doing business with them." It is true on cross-examination she testified that this trip to St. Louis was in October, 1935, but she was evidently mistaken about the year, because in October, 1935, the judgment of the Justice of the Peace Court had long since been taken and satisfied by the garnishment proceeding and her own suit for malicious prosecution had been filed.

She stated that at different times she had given her personal check to the defendant company in payment for merchandise purchased by Mr. Beatty, but said she only gave such checks when her husband gave her that amount of money in cash. She didn't recall the exact number of such checks so given, but thought there were three or four. The record does not disclose whether the three credits of $25 each given on the account are represented by her checks.

The partnership agreement between Ray Beatty and Mrs. Hanger was introduced and disclosed that they were the sole partners and that Mrs. Beatty had no interest in the partnership. This partnership was carried on under the trade name of "Vig-O-Rol Company." The partnership agreement was made on May 5, 1933, and a contract of dissolution was entered into on May 23, 1934, by Ray Beatty and Mrs. Hanger, wherein it was recited that this account of Puritan Cosmetic Company of $208.41 was to be assumed and paid by Ray Beatty, together with certain other accounts. Mrs. Beatty testified that her husband did not keep a bank account. That during all the times here involved, she and her husband were living together as man and wife in the same house. That her place of business, The Frederic Hotel, was located at 312 East 9th Street, Kansas City. That the first time she knew her husband owed this account or that any suit had been filed against her was when her bank account was garnisheed. Such other facts as are necessary will be mentioned in the opinion.

An indispensable element of an action for malicious prosecution, either or a criminal or a civil action, is want of probable cause. [Wilcox v. Gilmore (Mo.), 8 S. W. (2d) 961.]

We are immediately confronted with the question: Was the final judgment in the justice court conclusive evidence of probable cause? In some jurisdictions it is held so to be, but that is not the rule in Missouri. In the Wilcox v. Gilmore case, *supra* (1. c. 963), our Supreme Court announced the rule as follows:

"The weight of authority is that a judgment or finding in favor of plaintiff in the original action is conclusive evidence of probable cause, or estops defendant therein from denying the existence of probable cause, in the absence of fraud or other improper means used in obtaining the judgment, and it has been held that the conclusiveness of the judgment on the question of probable cause is not affected by the fact that it is erroneous, or by the fact that it is reversed on appeal to a higher court, or set aside for irregularity. [38 C. J. 419.] In the Missouri decisions, such prior judgment is generally spoken of as *prima-facie* evidence of probable cause, which may be rebutted or overthrown by evidence that such judgment or commitment was obtained by false or fraudulent testimony, or other improper means, or that the prosecutor himself did not believe the facts alleged in support of the prosecution. [Cases cited.]

The same rule is announced and followed in Dawes v. Starrett, 336 Mo. 897, 82 S. W. (2d) 43. Applying such principles to the case under consideration, we conclude that the judgment of the Justice court was *prima-facie* evidence of probable cause and without more, would be conclusive, but the plaintiff may rebut such presumption or *prima-facie* evidence of probable cause by proof that the defendants obtained or induced the judgment by false testimony, or by intentionally withholding or concealing pertinent facts necessary to a full and fair hearing, which were known to the defendants, or which they could, by due diligence, have ascertained, or by other improper or fraudulent means, or by showing that the defendants did not believe the plaintiff owed the account. By the allegations of her petition and the evidence introduced, plaintiff recognizes that she has the burden of overcoming the presumption of probable cause resulting from the final judgment; and it is her contention that her evidence is sufficient to rebut and overcome that presumption and therefore the court should have submitted said cause to the jury.

Her evidence is uncontradicted that she did not have any interest, directly or indirectly, in the partnership business of Ray Beatty and Mrs. Hanger. That before or at the time credit was extended to Ray Beatty by the defendant Puritan Cosmetic Company, she notified its credit manager that she had no interest in the partnership or in his business, that she and her husband ran separate businesses and that the company must look to him alone for the payment of any goods sold. It is true in her direct testimony she testified this conversation took place in October, 1933, while on cross-examination she testified it occurred in October, 1935, but this conflict would not totally destroy her evidence but would only go to its weight. [Jones v. St. Louis & C. Ry. Co., 333 Mo. 802, 63 S. W. (2d) 94; Parrent v. Mobile & Company Ry., 334 Mo. 1202, 70 S. W. (2d) 1068.]

The files in the Justice of the Peace Court showed that the account sued on (plaintiff's Exhibit 2) was made out in the name of "Mr. and Mrs. Ray Beatty, 1023 Grand Avenue, Kansas City, Missouri," and listed the total purchases and the credits given and showing the balance due of $208.41. Attached to that composite account were the various invoices, showing in detail the various items purchased, and the date, the invoice number, and the price of each item so purchased. The first invoice was dated October 2, 1933, for total purchases of $129.75 and was made out to "Mr. and Mrs. Ray Beatty, 1023 Grand Avenue, Kansas City, Missouri." It appears from an examination of this invoice that immediately following the words "sold to:" appears the name "Ray Beatty," and typewritten above that matter is the following: "Mr. and Mrs." Plaintiff argues that unusual placing of the "Mr. and Mrs." would authorize the jury to infer that the "Mr. and Mrs." had been placed there subsequent to the purchase and making out of the original invoice. The invoice of October

24th was made out as follows: "Sold to: Ray Beatty, 1023 Grand Avenue, Kansas City, Missouri." The invoice of October 20th and October 4th were made out in the same manner. Her name did not appear on any of those three.

Her evidence also was that she had never seen any of these invoices or any statement of the account and that no demand had ever been made on her to pay the same; in short, that she knew nothing of the outstanding account until her personal bank account was garnisheed, which was after the judgment in the justice court had become final. She was in the hotel business at 312 East 9th Street, while the place of business of Ray Beatty and Mrs. Hanger was located at 1023 Grand Avenue. She denied that any agent or representative of the Cosmetic Company had ever called on her or that she had ever had any conversation with any representative of the company except the credit manager, as above detailed. She also testified that she had never authorized her husband or any one else to purchase these goods in her name or on her credit. It is true that she had sent to the Cosmetic Company her personal check on two or three occasions to pay for goods purchased by her husband, but that she did this only when her husband gave her the cash and for convenience to him, because he kept no bank account.

The judgment of the justice of the peace recites that he heard evidence on behalf of the plaintiff, and we think that recital is sufficient to raise the inference that evidence as to the correctness of the account and the liability of Mr. and Mrs. Beatty was introduced on behalf of the Cosmetic Company. Therefore, the issue is squarely presented as to whether plaintiff's evidence in this case is sufficient to rebut the presumption of probable cause which arises from the final judgment of the justice of the peace. We think it is sufficient as to the defendant Puritan Cosmetic Company, but is wholly insufficient as to the defendant. W. Arnold Brannock, Jr. The only evidence connecting defendant Brannock with the matter is that he received the account through the mail in the usual course of business from some forwarding attorney or agency in St. Louis, Missouri, and that he had no other information except the account. Certainly, no submissible case was made against him and the trial court properly sustained his demurrer to the evidence and the action of the court in so doing is affirmed.

In passing upon the propriety of the trial court sustaining a demurrer to plaintiff's evidence, we are required to examine all of the testimony in the most favorable light to plaintiff and give to plaintiff the benefit of the most favorable inferences therefrom. This is a principle so well established by the decisions that no citation of authority in support need be made. Viewed in this light, we conclude that plaintiff's evidence is sufficient to make a submissible case against

the defendant Puritan Cosmetic Company. [Steppuhn v. Chicago Great Western R. Co., 204 S. W. 579; Dawes v. Starrett, *supra*.]

The defendants contend that when the plaintiff filed a motion in the Justice of the Peace Court attacking the validity of the garnishment and that motion was overruled and she failed to appeal therefrom, that she thereby acquiesced in the judgment and the payment thereof. There is no merit in that contention, because the overruling of that motion did not foreclose the question of whether the suit had been filed against her without probable cause and the judgment thereon had been procured by false testimony or other improper means.

The defendants next contend that because the plaintiff admitted that she had sent her personal checks to the Cosmetic Company in payment of her husband's bills, it was sufficient for the company to believe that she was one of the owners of the business. But in the light of her positive and uncontradicted testimony that she had no interest in the business, and had told the credit manager that she would not be responsible in any way for the bills, it would not justify the court in declaring as a matter of law that the company had probable cause to charge the items here involved to her.

It is next contended that there is no proof that the justice of the peace entered judgment against Mrs. Beatty on false testimony. If her testimony is to be believed, and it must be in passing on a demurrer, then we think there was sufficient proof of that fact. On this point, we direct attention to an opinion by this court in the case of Steppuhn v. Chicago Great Western R. Co., *supra,* wherein BLAND, J., discusses at length this very proposition.

Defendants also assert that there was utter failure to prove malice. We think there is no merit in this contention. Malice does not necessarily mean hatred or ill will. It is the intentional doing of a wrongful act, without legal justification. It may be inferred from want of probable cause. [Waddell v. Krause, 241 S. W. 964; Pritchett v. Ins. Co., 73 S. W. (2d) 815; Randol v. Kline, 18 S. W. (2d) 500; La Font v. Richardson, 119 S. W. (2d) 25.]

The defendants also contend that there was no proof of damages, but our Supreme Court has held that this is a question for the jury. [Higgins v. Knickmeyer-Fleer Realty & Investment Co. et al., 74 S. W. (2d) 805, 812.]

The only case cited and relied on by the defendants is that of Dye v. Loewer, 94 S. W. (2d) 948. We have read that case very carefully and do not believe it is authority supporting the contention that the demurrer as to the defendant Puritan Cosmetic Company should have been sustained in this case. It discusses certain general principles governing malicious prosecution cases with which we have no quarrel, but it certainly does not rule the point here involved.

We are here discussing the question of probable cause as presented by the evidence on behalf of the plaintiff; defendants offered no evidence. Whether, when all the evidence is presented, probable cause is shown, as a matter of law, we cannot say. In the case of Higgins v. Knickmeyer-Fleer Realty & Investment Co., et al., *supra,* our Supreme Court defined probable cause in the following language:

"Probable cause is reasonable cause and may be defined as the existence of such a state of facts as would warrant an ordinary cautious and prudent man in the belief that the accused was guilty of the offense charged. It is not essential to the existence of probable cause that the evidence or facts upon which the party acted be sufficient to insure a conviction, for the question of probable cause does not turn upon the actual innocence or guilt of accused, but the prosecutor's belief in it based upon reasonable grounds."

We conclude that the action of the trial court in sustaining the demurrer as to defendant Brannock was correct and should be and is hereby sustained; and that the sustaining of the demurrer as to defendant Puritan Cosmetic Company was, for the above reasons, error, and the cause is reversed and remanded as to such defendant. All concur.